ROGER KNICELEY, Plaintiff-Appellant, v. JAMES J. MIGALA, Defendant-Appellee.

Second District   No. 2—91—1192

Opinion filed December 8, 1993.—Rehearing denied February 4, 1994.

David B. Selig and Salvatore Indomenico, both of Sussman, Selig & Ross, of Chicago (Michael W. Rathsack, of counsel), for appellant.

Mark C. Meyer, of O'Reilly, Cunningham, Norton & Mancini, of Wheaton (William F. Cunningham, of counsel), for appellee.

JUSTICE GEIGER delivered the opinion of the court:

Pursuant to a supervisory order of the Illinois Supreme Court, we reconsider our previous opinion in this medical malpractice case. In our initial review of the trial court's judgment in defendant's favor, we reversed and remanded for a new trial after concluding that defendant had failed to satisfy the disclosure requirements for expert witnesses set forth in Supreme Court Rule 220 (134 Ill. 2d R. 220). (*Kniceley v. Migala* (1992), 237 Ill. App. 3d 72.) The supreme court subsequently denied defendant's petition for leave to appeal, vacated our previous judgment, and remanded to us for reconsideration in light of its decision in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1992), 154 Ill. 2d 543. *Kniceley v. Migala* (1993), 149 Ill. 2d 650.

*Wakeford* addressed the Rule 220 issue, but not the other issues decided in our previous opinion. The supreme court ordered us to reconsider our opinion in the light of *Wakeford*. Accordingly, we will limit our reconsideration to the Rule 220 issue.

The relevant facts are as follows. In July 1985, plaintiff, Roger Kniceley, twisted his left knee walking up a steep incline while on duty as a police officer. Between September 1985 and February 1986, defendant, James Migala, M.D., an orthopedic surgeon, performed three arthroscopies on plaintiff's left knee. During the third arthroscopy, defendant found a one-inch piece of plastic, the tip from a cannula (a device used in arthroscopies), inside plaintiff's knee. Defendant admitted that the cannula tip must have broken off and been left inside plaintiff's knee during one of the prior arthroscopies, probably the first.

Plaintiff's original injury was a lateral subluxating patella. Despite physical and occupational therapy, plaintiff was unable to return to his work as a police officer because of recurrent difficulties with his left knee which resulted from damage to the articular cartilage. Plaintiff subsequently filed a medical malpractice action against defendant.

At the trial, plaintiff called an expert witness who opined that

the damage to plaintiff's articular cartilage resulted from the cannula tip left in plaintiff's knee. Plaintiff also presented expert testimony that defendant deviated from the applicable standard of care by failing to inspect the cannula at the end of the surgery, or that a surgical technician deviated from the applicable standard of care by failing to inspect the cannula at the end of the operation. Plaintiff alleged that defendant was vicariously liable for the negligence of the surgical technician.

Defendant testified as his own expert witness. Defendant opined that the applicable standards of care did not require either him or his surgical technician to inspect the cannula at the end of the operation. Defendant also opined that the damage to plaintiff's articular cartilage resulted from the original injury rather than from the presence of the cannula tip inside plaintiff's knee.

Three other expert witnesses testified. All of these experts, Doctors Payne, Stone, and Kaushal, testified that in their opinions the damage to plaintiff's left knee was the result of or was consistent with plaintiff's original injury. Doctors Payne and Kaushal both also testified that the applicable standard of care did not require orthopedic surgeons who performed an arthroscopy to inspect a plastic cannula after the arthroscope. Plaintiff objected to the proffered testimony of Doctors Kaushal and Stone on the ground that neither had been disclosed as an expert witness under Rule 220. The trial court overruled the objections and allowed Doctors Kaushal and Stone to testify.

The record shows that plaintiff was aware of the identity of Kaushal and Stone before the trial. Plaintiff also knew, because of discovery depositions taken by defendant, that Kaushal and Stone had formed opinions regarding plaintiff's injuries. In addition, plaintiff knew that defendant obtained an evidence deposition from Kaushal just before the trial began.

On appeal, plaintiff contended, *inter alia*, that the trial court erred when it allowed Doctors Kaushal and Stone to testify as expert witnesses regarding the causation and standard-of-care issues (Stone only testified about causation) because defendant did not disclose them as expert witnesses within the Rule 220 deadlines (134 Ill. 2d R. 220(b)(1)). There was no dispute that if the Rule 220(b)(1) deadlines had been applicable, the trial court should have barred the expert testimony of Doctors Kaushal and Stone. There also was no dispute that Kaushal and Stone were expert witnesses as those terms are defined in Rule 220(a)(1) (134 Ill. 2d R. 220(a)(1)). Defendant argued that, although Kaushal and Stone were expert witnesses, Rule 220(b)(1) did not require their disclosure because they were either

treating physicians or examining physicians not retained by defendant to testify at trial and therefore not within the scope of Rule 220.

In our previous opinion, this court recognized that treating physicians are exempt from Rule 220 disclosure requirements under *Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 234-35. However, we concluded that Doctors Kaushal and Stone were not treating physicians, but were "examining physicians" whose sole purpose in examining plaintiff was to determine whether he remained unable to work and therefore eligible to continue to receive worker's compensation payments. We noted that a number of cases have extended the *Tzystuck* rationale to experts who were not treating physicians. However, we concluded that those cases have eroded Rule 220's purpose, to prevent surprise testimony, and declined to further extend *Tzystuck* to examining physicians. (*Kniceley*, 237 Ill. App. 3d at 78.) We found that the trial court erred when it did not bar the expert testimony of Kaushal and Stone under Rule 220. After determining that the error was not harmless, we reversed and remanded for a new trial.

In *Wakeford*, an unknown assailant shot plaintiff in a parking lot outside defendant's restaurant when plaintiff returned to his car after dining in the restaurant. (154 Ill. 2d at 544-45.) Plaintiff's complaint alleged that defendant was negligent or wilful and wanton in failing to provide adequate lighting and a security guard. At trial, over plaintiff's objections, a police officer who had investigated the crime testified in an evidence deposition that, in his opinion, the restaurant was not located in a high crime area and therefore a security guard was not necessary. The jury returned a verdict in favor of defendant. On appeal, the appellate court reversed and remanded for a new trial. The court held that the trial court erred in permitting the police officer's testimony because he was not disclosed as a Rule 220 expert witness. 154 Ill. 2d at 545-46.

In *Wakeford*, the supreme court concluded that the police officer was an expert under Rule 220(a) and that therefore the issue before it was whether the police officer was subject to the disclosure and discovery requirements of Rules 220(b)(1) and (c). The court noted that Rule 220(b)(1) provides in part:

> " 'In order to insure fair and equitable preparation for trial by all parties the identity of an expert *who is retained to render an opinion at trial* on behalf of a party must be disclosed by that party [no later than 60 days before trial] ***. Upon disclosure, the expert's opinion may be the subject of discovery as provided in paragraph (c) hereof. Failure to make the disclosure required by this rule or to comply with the discovery contemplated herein will

result in disqualification of the expert as a witness.' (Emphasis added.) (134 Ill. 2d R. 220(b)(1).)" *Wakeford*, 154 Ill. 2d at 546.

Defendant in *Wakeford* contended that the police officer was not subject to the Rule 220(b)(1) disclosure requirements because the officer had not been "retained" as an expert. Defendant relied on *Tzystuck*.

The *Wakeford* court next analyzed *Tzystuck*'s rationale. The court noted that the first consideration in *Tzystuck* was whether the expert's testimony could have surprised the adverse party. (*Wakeford*, 154 Ill. 2d at 547-48.) The court concluded that "[b]ecause the defendants in *Tzystuck* could not reasonably be surprised that the treating physician was rendering an opinion about the plaintiff's medical condition, disclosure under Rule 220 was unnecessary." (154 Ill. 2d at 548.) The court also noted that a second support for the *Tzystuck* holding was that a party cannot exert the same control over a nonretained expert as a retained expert. (154 Ill. 2d at 548.) This is significant because of the Rule 220(c) discovery requirements and bolsters the *Tzystuck* rationale, but "the primary basis of the decision rests in the need to eliminate surprise." 154 Ill. 2d at 548.

The *Wakeford* court then reviewed appellate court decisions since *Tzystuck* and concluded that "[i]n each instance, the appellate court has examined the expert's relationship to the case to determine whether the expert's opinion testimony would surprise the opposing party." (154 Ill. 2d at 548.) The court then stated:

"We agree with our appellate court that the question of whether a witness must be disclosed as an expert under Rule 220 depends on the expert's relationship to the case. If the expert is intimately involved in the underlying facts giving rise to the litigation and he would reasonably be expected to form an opinion through that involvement, then disclosure is not required. In such a case, the opposing party is unlikely to be surprised by the testimony. On the other hand, where the expert's contact with the case is slight, or where the opinion rendered is unrelated to the expert's involvement in the case, then disclosure is required." 154 Ill. 2d at 549.

The *Wakeford* court next applied the relationship-to-the-case test to the facts before it. The court found that even though the police officer investigated the case independently and was outside of defendant's control he was a " 'retained expert' under Rule 220" and could not give his opinion regarding matters unrelated to his investigation without disclosure. (154 Ill. 2d at 549.) The court concluded that the police officer's opinion testimony regarding the need for security at the restaurant was unrelated to his investigation of the underlying crime and therefore subject to Rule 220 disclosure.

(154 Ill. 2d at 549.) After also concluding that the error in allowing the testimony was not harmless, the court affirmed the appellate court. 154 Ill. 2d at 550.

Subsequent to *Wakeford*, the Illinois Supreme Court again addressed Rule 220 and the *Tzystuck* rationale in *Boatmen's National Bank v. Martin* (1993), 155 Ill. 2d 305. *Boatmen's* was a medical malpractice case where plaintiff's guardian, a bank, claimed that defendant, an emergency room physician, negligently failed to diagnose a brain hemorrhage in plaintiff which led to a stroke, irreversible brain damage, paralysis, and plaintiff's confinement in a nursing home. (155 Ill. 2d at 308-09.) The expert whose testimony was at issue in *Boatmen's* was a neurologist, Dr. Schreiber, who was engaged by plaintiff's family to examine and evaluate plaintiff at her nursing home. (155 Ill. 2d at 309.) Schreiber took plaintiff's medical history (from her family), examined plaintiff, continued plaintiff on certain medications, advised plaintiff's family about her care, and saw plaintiff on three subsequent occasions. 155 Ill. 2d at 310.

Although plaintiff responded three weeks after Schreiber first saw her, plaintiff did not mention Schreiber in her answer to defendant's interrogatories for identification of persons with knowledge of plaintiff's injuries and attending or consulting physicians who treated plaintiff. (155 Ill. 2d at 310.) Plaintiff also did not mention Schreiber when she disclosed two potential medical experts under Rule 220. (155 Ill. 2d at 310.) Later, plaintiff did not mention Schreiber on a list of witnesses related to jury selection or in response to defendant's oral motion to update discovery. 155 Ill. 2d at 311.

Before trial, the record contained only two instances where Schreiber was mentioned. First, during a deposition, a rehabilitation specialist described Schreiber as the medical officer in plaintiff's case. (155 Ill. 2d at 310.) During that deposition, defendant inquired about Schreiber's recommendations. A related report referred to Schreiber as plaintiff's treating physician. Second, plaintiff's petition for guardianship contained a doctor's report written by Schreiber. 155 Ill. 2d at 311.

On the second day of the trial, defendant learned that Schreiber would testify concerning causation and standard-of-care issues. Defendant moved to bar Schreiber's testimony because plaintiff had not listed Schreiber as a treating physician or Rule 220 expert and had not produced any of Schreiber's records. 155 Ill. 2d at 311.

The trial court found that Schreiber was a treating physician and therefore not subject to Rule 220 and ruled that he could testify after being deposed. (155 Ill. 2d at 312.) Schreiber testified before the jury on the causation and standard-of-care issues. Schreiber's testimony was detrimental to defendant. 155 Ill. 2d at 312-13.

The appellate court affirmed the jury's verdict in favor of plaintiff and agreed with the trial court that Schreiber was not subject to Rule 220 disclosure because he was a treating physician. (155 Ill. 2d at 313.) The appellate court also determined that, although the trial court had not abused its discretion in allowing Schreiber to testify as an occurrence witness, defendant had been "surprised" when Schreiber was called to testify. The appellate court found that the surprise was not inadvertent. *Boatmen's*, 155 Ill. 2d at 313.

After agreeing that the trial court had not abused its discretion by allowing Schreiber to testify as an occurrence witness, the supreme court addressed the issue of whether Schreiber was subject to Rule 220 disclosure. (155 Ill. 2d at 320.) The court relied on *Tzystuck* and *Wakeford* for the principles which should be used in determining whether a witness is subject to Rule 220 disclosure. The court first noted *Tzystuck*'s focus on the language of Rule 220 and *Tzystuck*'s holding that treating physicians are not subject to Rule 220 disclosure because they are not "retained to render an opinion at trial." (155 Ill. 2d at 321.) The court then noted with approval that *Wakeford* found: (1) that the primary basis for the *Tzystuck* treating-physician exception was the need to eliminate surprise expert testimony; (2) that lack of control over a witness was not a primary basis for the *Tzystuck* decision; and (3) that the witness' relationship to the case and the context in which the witness' opinions arose were the factors which determined whether a witness was "retained" under Rule 220(b)(1). (155 Ill. 2d at 323.) The court stated:

> "*Wakeford* held that the issue of 'retained' under Rule 220(b)(1) could be determined by examining the witness' relationship to the case. The relationship could be examined to determine whether the expert's related opinion could be reasonably expected to be formed through the expert's involvement in the underlying facts. ***
>
> Applying this rationale, *Wakeford* found that the police officer was a 'retained expert' under Rule 220 because his expert opinion testimony about the area around the hotel and the need for security could not be reasonably expected to have been formed through his investigation of the underlying crime. *Wakeford*, 154 Ill. 2d at 549." *Boatmen's*, 155 Ill. 2d at 323.

Following the rationale of *Wakeford* and *Tzystuck*, the *Boatmen's* court then applied the relationship-to-the-case test to the facts before it. The court first considered Schreiber's involvement in the case. After describing Schreiber's treatment of plaintiff, the court concluded that it could not say that Schreiber's involvement was slight or peripheral. (155 Ill. 2d at 324.) Next, the court determined that Schrei-

ber's involvement was extensive enough so that he could have been expected to form an opinion as to the causes of plaintiff's condition and the "appropriateness of her previous treatment." (155 Ill. 2d at 324.) The court also noted that Schreiber had in fact independently formulated his opinions based on plaintiff's history and his own knowledge of and experience with plaintiff. (155 Ill. 2d at 324.) Based on these considerations, the court concluded that Schreiber's relationship to the case and the context in which his opinions arose were such that he was not subject to Rule 220 disclosure.

After reaching its conclusion, the court then stated:

"That is not to say that, in all instances, treating physicians are never subject to Rule 220(b)(1) disclosure. (See *Kniceley v. Migala* (1992), 237 Ill. App. 3d 72, 77-78 (drawing distinction between 'examining' physicians and treating physicians).) The test is in the nature of the physician's relationship and whether a related opinion could be expected to be formed through that involvement. Application of that test achieves the purposes of Rule 220, the elimination of surprise expert opinion testimony.

It may well be that the treating physician-patient relationship is unique for purposes of determining Rule 220(b)(1) disclosure. *** As a consequence, the line between treatment-associated opinions and litigation-associated opinions is often ambiguous and may well be indiscernible. We believe that the present case, while not presenting the issue of this distinction, nevertheless informs us of the ease with which that line may be crossed. We strenuously disapprove of strategies which are purposefully designed to circumvent our discovery rules, resulting in unfair surprise to litigants. Under the facts of this case, however, we are not called to develop more specific legal criteria to avoid such abuse, and we decline to do so. [Citation.]

We note, parenthetically, that the appellate court in *Wakeford v. Rodehouse Restaurants of Missouri, Inc.* (1991), 223 Ill. App. 3d 31, 39-40, recommended that all experts be subject to Rule 220(b)(1) disclosure and that the 'retained' versus 'nonretained' distinction be determinative of the discovery requirements of Rule 220. The recommendation bears consideration by this court in its rulemaking capacity. However, because that recommendation necessarily implicates provisions which are not at issue here, we simply note the recommendation." 155 Ill. 2d at 324-26.

Here, the issue is whether, in light of *Wakeford* and *Boatmen's*, defendant was obliged to disclose Kaushal and Stone as expert witnesses in accordance with Rule 220(b)(1). To resolve this issue, we will apply the relationship-to-the-case test as set out in *Wakeford* and *Boatmen's*.

■ The relationship-to-the-case test was stated in *Wakeford* as follows: "[i]f the expert is intimately involved in the underlying facts giving rise to the litigation and he would reasonably be expected to form an opinion through that involvement, then disclosure is not required." (*Wakeford*, 154 Ill. 2d at 549.) This test clearly has two prongs. The first prong gauges the involvement of the expert in the underlying facts of the case. The second prong determines whether the expert's opinion could reasonably be expected from the expert's involvement in the case. *Wakeford*, 154 Ill. 2d at 549.

We find that Kaushal and Stone did not satisfy either of the prongs of the relationship-to-the-case test and that defendant was therefore required to disclose them in accordance with Rule 220.

■ Kaushal and Stone did not satisfy the first prong of the test because their involvement in the underlying facts was merely slight and peripheral. Neither Kaushal nor Stone was involved with the three arthroscopies. Nor was either involved in the immediate aftermath of the arthroscopies (unlike Schreiber, who had taken over plaintiff's treatment in *Boatmen's*). Neither Kaushal nor Stone provided any treatment to plaintiff. Both experts first saw plaintiff almost two years after plaintiff injured his knee and more than a year after the last arthroscopy performed by defendant. Kaushal only saw plaintiff once for a five-minute examination. Stone saw plaintiff briefly four times over a $3^{1}/_{2}$-year period. Each examination was at the direction of plaintiff's attorney in an unrelated workmen's compensation proceeding. The specific purpose of each examination was to determine whether plaintiff was able to return to work because of his knee trouble. At the time of their examinations, although both experts had defendant's medical records, neither Kaushal nor Stone was aware that a cannula tip had been left in plaintiff's knee during an arthroscopy. The total extent of the involvement of these experts with plaintiff was limited to these brief examinations. Based on these facts, we cannot say that Kaushal and Stone were intimately involved in the underlying case. Because they were not intimately involved in the underlying facts giving rise to the litigation, Kaushal and Stone do not satisfy the first prong of the relationship-to-the-case test.

■ Whether either Kaushal or Stone could have reasonably been expected to form an opinion based on their involvement with the case, the second prong of the test, is a closer question. This is because an orthopedic surgeon who examines a patient in regard to a worker's compensation proceeding could be expected to form an opinion about the causation of the patient's injury. The reason we conclude that the opinions in this case do not satisfy the second prong of the relation-to-the-case test is based on the focus of these witnesses and

the information they had when they made their examinations. When Kaushal and Stone examined plaintiff, they did so expressly for the purpose of determining plaintiff's worker's compensation status and were unaware of plaintiff's complete medical history. Based on this involvement, an opposing party would not reasonably expect either Kaushal or Stone to form an opinion as to the issues in this medical malpractice case without going beyond the scope of their involvement. The same reasoning applies to the standard-of-care issue.

For all these reasons, we find that Kaushal and Stone did not satisfy the relationship-to-the-case test. Defendant was therefore required to disclose these witnesses in accordance with Rule 220(b)(1). Because he did not so disclose them, the witnesses were disqualified as expert witnesses.

The fact that plaintiff actually knew or should have known of the likely testimony of Kaushal and Stone because of their discovery depositions does not change our conclusion. According to the relation-to-the-case test, as formulated in *Tzystuck, Wakeford* and *Boatmen's*, in order for a party not to be surprised by an expert witness who has not been disclosed under Rule 220, the witness must have had an intimate involvement with the underlying case and be reasonably expected to form an opinion on the basis of that intimate involvement. As seen above, Kaushal and Stone did not satisfy this test, and their testimony was therefore subject to Rule 220 disclosure.

We are aware that our position can be viewed as an overly technical approach to Rule 220 (see *Kniceley*, 237 Ill. App. 3d at 82-83 (Inglis, P.J., dissenting) (arguing that where a party fails to timely disclose his intention to call expert witnesses whose identities and opinions are known by the party's opponent a reversal is not appropriate)). However, prior knowledge of an expert's involvement in a controversy is not an adequate substitute for Rule 220's disclosure requirements. (See *Mazzone v. Holmes* (1990), 197 Ill. App. 3d 886, 901.) We believe that the *Wakeford* and *Boatmen's* holdings require the Rule 220 disclosure of an expert witness unless the witness satisfies the relationship-to-the-case test. Unless the relationship-to-the-case test is met, the party intending to call an expert witness must disclose the expert as required by Rule 220, or the expert will be disqualified.

Based on the foregoing, we conclude that our judgment in our previous opinion was not erroneous. However, because our reasoning here was different from that in our previous opinion, we will not reinstate our previous opinion.

■ We agree with our previous opinion that the erroneous admission of the expert testimony in question cannot be considered harmless. Plaintiff is therefore entitled to a new trial.

In our previous opinion, we considered the other issues raised by plaintiff because they might recur at the new trial. We adopt our previous disposition of those issues here. We will not repeat our discussion of those issues, but instruct the circuit court to follow our disposition of those issues from our previous opinion.

In summary, we conclude that the trial court erred in determining that Kaushal and Stone were not subject to Rule 220(b)(1) disclosure. Because the error was not harmless, the judgment of the circuit court of Du Page County is reversed, and the cause remanded for a new trial.

Reversed and remanded.

INGLIS, P.J., and WOODWARD, J., concur.