1–01–0610   First Division

May 28, 2002

ALICIA PETTIGREW ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

) 96 L 12507

)

ALLEN PUTTERMAN, ) The Honorable

) Jennifer Duncan Brice,

Defendant-Appellee . ) Judge Presiding.

PRESIDING JUSTICE COHEN delivered the opinion of the court:

Plaintiff Alicia Pettigrew, a nurse at Michael Reese Hospital, filed a two count complaint against defendant Dr. Allen Putterman.  In the first count, plaintiff alleged that she suffered a laceration to her hand when defendant handed her a used surgical scissors in a negligent manner during a surgical procedure.  In the second count, plaintiff additionally alleged that she had suffered emotional distress arising from fear of contracting acquired immune deficiency syndrome (AIDS) as a result of defendant's negligence.  Defendant, seeking summary judgment, argued that the "actual exposure" rule announced in 
Majca v. Beekil
, 183 Ill. 2d 407 (1998), bars recovery because plaintiff could not prove actual exposure to the human immunodeficiency virus (HIV), the virus which causes AIDS.  The trial court granted summary judgment.  Plaintiff appealed.  For the following reasons, we reverse and remand.

FACTS

Defendant, an ophthalmic plastic surgeon, performed surgery on the eyelid of an unidentified
(footnote: 1) patient on November 1, 1994.  Plaintiff assisted in that surgery as a scrub nurse.  According to plaintiff's first amended complaint, the surgical patient was "suffering from the AIDS infection" at the time of the surgery.  After using a surgical scissors to cut the patient's eyelid, defendant allegedly dropped the scissors onto plaintiff's hand while attempting to hand them to her.  The scissors punctured plaintiff's glove and the skin of her hand.  In both counts of her complaint, plaintiff alleged that defendant was negligent in that he:

"(a) Failed to observe the field or area where the scissors were being placed before releasing said instrument;

(b) Failed to place the scissors into the plaintiff's hand before releasing said instrument; and/or

(c) Failed to wait for the plaintiff to grip the scissors before releasing said instrument."

In count I of her complaint, plaintiff alleged that, as a result of defendant's negligence, plaintiff suffered "injuries including but not limited to the laceration to her hand, lost wages, medical expenses, pain and suffering, [and] physical and emotional trauma."  In count II of her complaint, plaintiff additionally alleged that, as a result of defendant's negligence, plaintiff "suffered emotional distress from having been exposed to the AIDS virus."

In his original answer to plaintiff's first amended complaint defendant admitted that "he performed a surgical procedure with the assistance of the plaintiff *** on a patient who subsequently was determined to be HIV positive."  Defendant later moved for leave to amend his answer, alleging that through discovery he had learned both that "the surgical patient was never diagnosed as being HIV  positive at the time of the occurrence" and further that there was no evidence of HIV positive test results sufficient to establish a diagnosis of HIV infection as defined by section 697.100 of the Illinois Administrative Code (77 Ill. Adm. Code §697.100 (2001)).  After the trial court granted defendant's motion, defendant filed an amended answer denying that the surgical patient was either suffering from the AIDS infection or HIV positive.

Defendant then moved for summary judgment, arguing that the Illinois Supreme Court has held that a plaintiff must provide proof of actual exposure to HIV in order to maintain a cause of action for fear of AIDS (
Majca v. Beekil, 
183 Ill. 2d 407, 420-21 (1998)).  Defendant further noted that section 697.100 of the Illinois Administrative Code requires two positive screening test
(footnote: 2) results followed by one positive confirmatory test
(footnote: 3) result before a tested sample shall be considered to be HIV positive (77 Ill. Adm. Code §§697.100(b)(2), (b)(3) (2001)).  Defendant argued that without evidence of a positive confirmatory test result, plaintiff could not prove actual exposure to HIV and therefore could not maintain a cause of action for fear of AIDS.

In response, plaintiff submitted a redacted perioperative nursing record indicating that the surgical patient had a history of intravenous drug abuse.  In her deposition, plaintiff testified that, following the accident, she went to the Employee Health Service at Michael Reese Hospital, where her blood was drawn for HIV testing pursuant to hospital policy.  Plaintiff underwent three further HIV tests at six weeks, six months, and one year after the accident.  Each test was negative for HIV.  Pursuant to hospital policy, the surgical patient's blood was also drawn and tested immediately following the accident.  Plaintiff testified that Nurse Paulette Abadiano of the Employee Health Service informed plaintiff two days later that the surgical patient had tested positive for HIV.  Plaintiff consulted with her primary care physician, who recommended that plaintiff take AZT, a drug commonly prescribed for treatment of HIV infection.  Dr. Scott McCallister, an infectious disease specialist who consulted with plaintiff through the Employee Health Service, prescribed AZT to plaintiff.  

Plaintiff also submitted the deposition testimony of both defendant and Dr. Fred Bodker, a surgical fellow who assisted at the surgery in question.  During his deposition, defendant testified that he had told his wife that an accident had occurred involving plaintiff and that the surgical patient "turned out to be HIV positive."  Defendant later testified that both Nurse Abadiano and Dr. Bodker had informed him that the surgical patient was HIV positive.  Dr. Bodker was asked at his deposition, "Did any of you know at the time of the actual operation the HIV status of this patient?"  Dr. Bodker responded, "It seems to me we knew he was positive."  

Finally, plaintiff submitted the deposition testimony of Nurse Abadiano confirming that Dr. McAllister prescribed AZT for plaintiff.  Nurse Abadiano testified that she did not inform plaintiff that the surgical patient was HIV positive but rather that the ELISA results for the surgical patient were positive for HIV.  Nurse Abadiano could not remember whether she told plaintiff that the surgical patient's blood sample had been sent for confirmatory Western Blot testing.  Nurse Abadiano thought she had told plaintiff that Western Blot results were still pending.  Defense counsel introduced a packet of documents identified as Exhibit 1.  Nurse Abadiano identified a document included in the packet as a form regularly used in the Employee Health Department at Michael Reese Hospital.  A portion of the form, which Nurse Abadiano read into the record, indicated that the surgical patient has tested "positive times 2 by ELISA"   Nurse Abadiano identified a second document titled "HIV Antibody Final Results" as a report included in plaintiff's employee health record.  This document indicates that testing of the surgical patient's blood sample was "positive by ELISA"; however, the quantity of the sample was insufficient to confirm that result by Western Blot.  Nurse Abadiano testified that she never saw any confirmatory Western Blot result for the surgical patient.  (Although neither of the above-mentioned documents is appended to Nurse Abadiano's deposition, both are included in the record as exhibits to the deposition of Dr. McCallister, which was also submitted in response to the motion for summary judgment.)

At his deposition, Dr. McAllister explained that testing for HIV infection involves three components.  First, a sample is subjected to a screening test such as the ELISA test for HIV.  If the ELISA test returns a positive result, a second ELISA test is run to ensure that the first result was accurate.  After two positive ELISA results, a confirmatory test such as the Western Blot is run to confirm a diagnosis of HIV infection.  Dr. McAllister testified that without a positive confirmatory test result, no diagnosis of HIV infection would be made.  A report of the surgical patient's test results is included as an exhibit to Dr. McCallister's deposition.  The report indicates two positive ELISA results but that the sample submitted for Western Blot testing was insufficient and therefore that test was inconclusive.

Prior to ruling on defendant's motion for summary judgment, the trial judge entered an order granting plaintiff leave to file a motion to compel the surgical patient to present his medical records for 
in camera
 inspection.  Plaintiff filed such a motion; however, defendant objected noting that the surgical patient was not a party to the lawsuit and the trial court was without authority to compel the patient to disclose his medical records.  The trial court denied the motion to compel.

In ruling on defendant's motion for summary judgment, the trial judge noted:

"This Court finds that the above claims [for fear of contracting AIDS] are based on hearsay statements made by nurses and physicians.  There is no foundation in fact before this Court which supports Plaintiff's belief and there is no evidence to confirm that the patient is HIV positive.  While the Court is sympathetic to Plaintiff's situation, the law is clear that the Court cannot force the patient to divulge his medical status.

Hence, as stated in both 
Majca
 and 
Natale 
[
v. Gottlieb Memorial Hospital
, 314  Ill. App. 3d 885, 888 (2000)], 'without proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable.'  
Majca
, [183 Ill. 2d] at 420.  Accordingly, Plaintiff has not provided this Court with any evidence that she was actually exposed to HIV.  Plaintiff has not presented evidence that the *** [surgical] patient was infected or that Plaintiff has tested positive for HIV.  Consequently, the 'actual exposure' test has not been met."

The trial judge entered summary judgment in favor of defendant.  Plaintiff appeals.

ANALYSIS

Summary judgment is proper if the pleadings, depositions and admissions on file, along with any affidavits, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.   735 ILCS 5/2-1005(c) (West 2000).  Because the propriety of an order granting summary judgment is a question of law, our review is 
de novo
.  
Pagano v. Occidental Chemical Corp., 
257  Ill. App. 3d 905, 909 (1994). 

I.  Negligence

While neither the parties nor the trial judge addressed this fact, we note that count I of plaintiff's complaint does not involve a claim for fear of contracting AIDS.  Rather, count I alleges damages in the form of "injuries including but not limited to the laceration to her hand, lost wages, medical expenses, pain and suffering, [and] physical and emotional trauma" resulting from defendant's alleged negligent handling of surgical scissors.  Although defendant's motion sought summary judgment on plaintiff's complaint without distinguishing between counts I and II, the argument presented in that motion is directed solely at plaintiff's claim in count II for fear of AIDS.  Defendant asserts no basis for granting summary judgment as to count I.  Indeed, it is apparent from the record that genuine issues of material fact remain as to whether defendant handled surgical scissors negligently.  Summary judgment on this count was clearly improper.

II.  Fear of AIDS

The Illinois Supreme Court in 
Majca 
conclusively ruled that proof of actual exposure to HIV is required in order to sustain a cause of action for fear of acquiring AIDS.  
Majca
, 183 Ill. 2d at 420-21.  Plaintiff argues that she presented sufficient evidentiary matter to raise a genuine issue of material fact as to whether she was actually exposed to HIV.  In the alternative, plaintiff urges this court to carve out a narrow exception to the actual exposure rule to permit recovery--even absent proof of actual exposure--where a plaintiff has been informed by reliable medical sources that she was actually exposed to HIV.  Because only our supreme court can overrule or modify its previous decisions (
Bainter v. Village of Algonquin
, 285  Ill. App. 3d 745, 756 (1996)), we express no opinion as to the merits of plaintiff's proposed modification of the "actual exposure" rule announced in 
Majca
. We thus address only whether plaintiff has raised a genuine issue of fact with respect to actual exposure. 

Defendant first responds that plaintiff admitted that no genuine issue of fact remains as to actual exposure by commenting in her brief before this court that "the fact is that the tests were inconclusive and the HIV status of the patient is not known."  Viewed in isolation, plaintiff's comment could indeed be read as a concession that no genuine issue of material fact remains.  We note, however, that immediately prior to the comment defendant quotes, plaintiff explicitly argues that "there is, at least, a question of fact as to whether [the surgical] patient was HIV positive."  Plaintiff goes on to discuss the evidence tending to suggest the surgical patient's HIV positive status.  Read in context, a fair reading of plaintiff's comment must be construed as conceding only that conflicting evidence was presented as to the HIV status of the surgical patient.

Defendant next argues that, absent a positive confirmatory test result, any conclusion that the surgical patient is HIV positive is unsupported by fact.  In his motion for summary judgment, defendant argued that because section 697.100(b) of the Illinois Administrative Code requires two positive screening test results followed by a positive confirmatory test result before a sample can be diagnosed as HIV positive (77 Ill. Adm. Code §§697.100(b)(2), (b)(3) (2001)), proof of actual exposure requires proof of a positive confirmatory test result.  Although defendant does not reference the regulation in his argument before this court, this regulation appears to be the basis of his contention that lack of a positive confirmatory test result is fatal to plaintiff's claim.
(footnote: 4)  Defendant further directs us to our supreme court's finding in 
Majca
 that the physician's affidavit relied upon by one plaintiff in that case consisted of legal conclusions unsupported by evidentiary facts and thus was properly stricken.  
Majca
, 183 Ill. 2d at 423-24.

In 
Majca
, our supreme court consolidated for purposes of appeal two cases in which plaintiffs sought recovery for fear of contracting AIDS.  In the first of these cases, Eileen Majca sued the estate of Dr. Peter Lacher and two other defendants after Majca was injured by a scalpel which Dr. Lacher had allegedly disposed of improperly in the medical office where Majca was employed.  Majca testified that she observed dried blood and a clear, mucus-like substance on the scalpel.  After receiving stitches in her hand, Majca discarded the scalpel with other office waste.  Majca never questioned Dr. Lacher about the scalpel nor did she attempt to discover whether Dr. Lacher knew who had used the scalpel or on whom it had been used.  Dr. Lacher later died of an AIDS-related illness.  
Majca
, 183 Ill. 2d at 411.

In support of her complaint, Majca submitted the affidavit of Dr. Linda Pifer, a microbiologist with experience in the fields of HIV infection and AIDS.  Dr. Pifer opined that: (1) Majca was exposed to HIV; (2) that Majca was at risk of contracting HIV; and (3) that Majca's fear of contracting HIV was reasonable.  Dr. Pifer stated that "whether or not HIV [was] on the scalpel is beside the point and immaterial to [Majca's] fear of becoming HIV positive."  Pursuant to Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)), the trial court struck Dr. Pifer's affidavit as conclusory and granted summary judgment to defendants because Majca could not prove actual exposure to HIV.

On review, our supreme court held that "[w]ithout proof of actual exposure to HIV, a claim for fear of contracting AIDS is too speculative to be legally cognizable."  
Majca
, 183 Ill. 2d at 420.  The court upheld the trial court's decision to strike Dr. Pifer's affidavit, noting that "[f]acts demonstrating [Majca's] actual exposure to HIV *** are not set forth in the affidavit" and that "Dr. Pifer's conclusions assume that the presence of HIV on the scalpel 'is beside the point and immaterial.'" 
Majca
, 183 Ill. 2d at 424.  Applying the "actual exposure" rule, our supreme court affirmed summary judgment, finding that Majca failed to present evidence demonstrating that the substances on the scalpel to which she was exposed were infected with HIV. The court further affirmed the dismissal of the complaint filed in the second of the two consolidated cases, finding that although the plaintiffs in that case alleged that a dental student who had treated them was HIV positive, the plaintiffs did not allege that they were exposed to the blood or bodily fluids of the dental student. 

The instant case is factually distinguishable from both of the underlying sets of facts in 
Majca
.  Here, plaintiff has alleged both that the surgical patient was HIV positive and that plaintiff was exposed to the blood of that patient in a manner capable of transmitting the virus.  Although plaintiff argues 
in the alternative
 that she should be permitted to recover even if the surgical patient was not HIV positive, plaintiff also argues that she presented evidence sufficient to raise a genuine issue of fact as to the HIV status of the surgical patient.

In support of her position, plaintiff first points to her own deposition testimony that Nurse Abadiano told plaintiff that the surgical patient was HIV positive.  The statement allegedly made by Nurse Abadiano to plaintiff, however, was inadmissible hearsay and cannot be considered in addressing defendant's motion for summary judgment.  See 
Pavlik v. Wal-Mart Stores, Inc.
, 323  Ill. App. 3d 1060, 1064 (2001) ("[H]earsay is an out-of-court statement offered to prove the truth of the matter asserted and is inadmissible unless it falls within one of the recognized exceptions to the rule."); 
Watkins v. Schmitt
, 172 Ill.2d 193, 203-04 (1996)
 ("evidence which would be inadmissible at trial cannot be considered by the court in support of or opposition to a motion for summary judgment")
.  

Plaintiff further notes that Dr. Bodker testified at his deposition that he believed he knew before the surgery that the surgical patient was HIV positive.  Dr. Bodker's deposition testimony as to his own knowledge of his patient's HIV status is properly considered in addressing a motion for summary judgment.  735 ILCS 5/2–1005(c) (West 2000) (court considers "pleadings, depositions and admissions on file, along with any affidavits" in resolving motion for summary judgment).

Further, the record reflects that defendant 
admitted 
in his original unverified answer to plaintiff's first amended complaint that the surgical patient was HIV positive.   The admissions of a party contained in an unverified original pleading that has been superseded by an amended pleading are not binding judicial admissions; however, such admissions may be used at trial as evidence of the matter admitted.   
Snitowsky v. NBS Subsidiary (WMAQ-TV), Inc.
, 297  Ill. App. 3d 304, 315 (1998).  Evidentiary admissions contained in a superseded pleading are properly considered in addressing a motion for summary judgment.  
Lawry's The Prime Rib, Inc.
 
v. Metropolitan Sanitary District of Greater Chicago
, 205  Ill. App. 3d 1053, 1059 (1990).  Defendant's admission in his unverified original answer that the surgical patient was HIV positive thus constitutes an evidentiary admission properly considered in addressing defendant's motion for summary judgment.

In addition, defendant testified in his deposition that he told his wife that the surgical patient "turned out to be HIV positive."  While defendant's out-of-court statement to his wife is hearsay, a party's own hearsay statement regarding a material fact is admissible as an exception to the hearsay rule and is competent evidence against that party.  
Pavlik
, 323  Ill. App. 3d at 1064.  This admission is therefore also properly considered in addressing defendant's motion for summary judgment.

Finally, plaintiff presented evidence that Employee Health Service records reflect that two ELISA screening tests of the surgical patient's blood were positive for HIV.  The statements contained in these documents are admissible under Supreme Court Rule 236(a) as writings or records made in the regular course of business (145 Ill. 2d R. 236(a)). We need not determine whether screening test results which have not been corroborated by a confirmatory test result would 
alone
 be sufficient to establish actual exposure to HIV.  We hold only that positive HIV screening test results tend to make an HIV-positive diagnosis more probable and thus are relevant evidence on this point.  See 
Voykin v. Estate of DeBoer
, 192 Ill. 2d 49, 57 (2000) (evidence that has any tendency to make the existence of a material fact more probable or less probable than it would be without the evidence is relevant).

Although defendant accurately notes the absence of positive confirmatory HIV test results, our supreme court in 
Majca
 did not require a plaintiff to provide direct evidence of specific test results in order to sustain a claim for fear of contracting AIDS.  See 
Majca
, 183 Ill. 2d at 420-21.  The purpose of summary judgment is not to try a question of fact but simply to determine whether, construing the pleadings, depositions, admissions and affidavits strictly against the movant and liberally in favor of the opponent, a genuine issue of triable fact exists.  
Schmitt
, 172 Ill. 2d at 203.   A party is not required to prove her case in order to withstand a motion for summary judgment but must simply present some factual basis that would support her claim.  
Prairie v. University of Chicago Hospitals
, 298  Ill. App. 3d 316, 326 (1998).  

Although defendant may be able to establish at trial that the belief of both Dr. Bodker and defendant that the surgical patient was HIV positive was based on diagnostically insufficient data, the basis for the doctors' statements was not explored during the doctors' depositions.  Defendant presented no evidence that the surgical patient was not HIV positive. Construing defendant's admissions, Dr. Bodker's testimony, and the two HIV-positive screening test results liberally in favor of plaintiff (
Schmitt
, 172 Ill. 2d at 203), we find the evidence sufficient to provide "some factual basis" for plaintiff's claim that she was actually exposed to HIV (
Prairie
, 298  Ill. App. 3d at 326).   Accordingly, summary judgment was improper as to count II of plaintiff's complaint.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court granting summary judgment in favor of defendant is reversed and the cause remanded for further proceedings.

Reversed and remanded.

COUSINS and TULLY, JJ., concur.

FOOTNOTES
1:

  Although the identity of the surgical patient is known to the parties, section 9 of the AIDS Confidentiality Act prohibits the disclosure of either: (1) the identity of a person upon whom an HIV test is performed; or (2) the results of an HIV test in a manner which permits identification of the subject of the test.  410 ILCS 305/9 (West 2000). 

2:

  The screening test utilized in the instant case is known as the "Enzyme-linked Immunosorbent Assay" (ELISA).  See 77 Ill. Adm. Code §697.100(a)(1) (2001) (identifying ELISA as an approved screening test).  

3:

  The "Western Blot Assay" (Western Blot) was used as a confirmatory test in the instant case.  See 77 Ill. Adm. Code §697.100(a)(2) (2001) (identifying the Western Blot as an approved confirmatory test).

4:

Defendant cites section 697.100 of the Illinois Administrative Code (77 Ill. Adm. Code §697.100 (2001)) in the "Statutes Involved" portion of his brief, but provides no argument regarding the relevance of this regulation.