NO. 4-02-0507

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BRUCE L. MOWEN,

Plaintiff-Appellee,

v.

CHRISTINE E. HOLLAND, f/k/a CHRISTINE E. BROWN,                    

Defendant-Appellant,

          and

RUSSELL HOLLAND, 

Defendant,

and

JOYCE BROWN and BERNICE KLINEFELTER,

          Intervenors.

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Adams County

No. 02OP74

Honorable

David K. Slocum,

Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant, Christine E. Holland, f/k/a Christine E. Brown, appeals from a plenary order of protection entered by the circuit court of Brown County (No. 02-OP-3) for the protection of Jessica L. Mowen (born December 30, 1995), the daughter of defendant and plaintiff, Bruce L. Mowen.  The circuit court of Brown County, on its own motion, at the time of entering the plenary order, transferred this case to Adams County to be consolidated with Adams County case No. 97-F-45.  Christine's husband, Russell Holland, also a defendant in this case, and intervenors Joyce Brown and Bernice Klinefelter, the maternal grandmother and great-grandmother of Jessica, are not parties to this appeal.  The issues on appeal are whether (1) the trial court abused its discretion by admitting into evidence hearsay statements of a caseworker for the Department of Children and Family Services (DCFS), (2) the trial court allowed improper impeachment of defendant, (3) evidence was sufficient to support the imposition of the plenary order of protection, and (4) the trial court failed to make findings of fact in compliance with the controlling statute.  We affirm.

On February 22, 2002, plaintiff filed in the circuit court of Brown County a petition pursuant to the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 
through 401 (West 2000)).  All proceedings related to this appeal were conducted in Brown County (Brown County case No. 02-OP-3), concluding with the circuit court of Brown County denying defendant's motion to reconsider on April 18, 2002.  The cause was then transferred to and filed in the circuit court of Adams County on April 22, 2002 (Adams County case No. 02-OP-74).  Thereafter, on May 17, 2002, defendant filed her notice of appeal in Adams County.

The petition sought emergency and plenary orders (1) directing Russell Holland and defendant not to strike, harass, or abuse Jessica; (2) placing the physical care and custody of Jessica in plaintiff; (3) preventing defendants from removing the child from the state or concealing her from plaintiff; and (4) ordering Russell to stay at least 1,000 feet away from Jessica.  The exhibits attached to the petition show that there had been disputes regarding custody and visitation in a paternity proceeding (
Mowen v. Brown
, Adams County case No. 97-F-45) involving defendant making unfounded reports of plaintiff abusing Jessica, and plaintiff's belief that Russell faced criminal charges of sexual offenses perpetrated on Russell's daughter, N.L.M. (born August 31, 1999).  The trial court entered the emergency order on February 22, 2002.  That order (1) restrained and prohibited defendants from harassing, interfering with personal liberty, intimidating, physically abusing, wilfully depriving, neglecting, exploiting, or stalking Jessica; (2) ordered them to stay away from Jessica; (3) granted plaintiff physical care and "possession" of Jessica; (4) ordered defendants not to remove the child from plaintiff; (5) directed that there be no visitation until further order of the court; (6) prohibited defendants from removing the child from the state and concealing her from plaintiff; (7) enjoined Russell from being within 1,000 feet of Jessica; and (8) authorized the temporary placement of Jessica in a school other than her current school.  The emergency order was set to expire at 3:30 p.m. on March 15, 2002, and a hearing for an extension of the order was scheduled for 10 a.m. on March 8, 2002.

At the hearing, the trial court heard the testimony of defendant, plaintiff, and plaintiff's wife Robin Mowen.  Russell invoked the fifth-amendment privilege against self-incrimination (U.S. Const., amend. V) and declined to testify.  At the conclusion of the hearing, the trial court entered an order continuing the emergency order in full force and effect as a plenary order until February 22, 2003, but modified the order to allow defendant, her parents, and her grandparents to have visitation for eight hours on alternate Saturdays, with visitation to be arranged and supervised by DCFS.

Defendant, called as an adverse witness, testified that Russell had recently been in jail on allegations of sexual assault against his (Russell's) daughter, who had been living with them.  Defendant was familiar with DCFS caseworker Beth Wienhoff.  Wienhoff had contacted defendant about the situation.  Wienhoff told defendant that Russell and his daughter were not to be in the same household.  The hearsay objection interposed by defendant's counsel was overruled.  According to defendant, Russell was arrested in the last week of February.  Jessica was living in their house at that time.  Defendant called Robin Mowen to arrange early visitation so defendant could bond Russell out of jail.  A condition of the bond was that Russell have no contact with his daughter or Jessica.  She bonded him out of jail on February 28, 2002.  At the time of the hearing, Russell was living in the marital home, and defendant was staying with her parents.  After Russell was released from jail, Wienhoff informed defendant that she was going to mail defendant a safety plan.  Defendant had not received it, and Wienhoff did not tell her of its contents.  Similarly, plaintiff was allowed to testify, over defendant's hearsay objection, that Wienhoff provided him with the information, on the basis of which he sought the order of protection, and told him to seek the order of protection.

We initially address the propriety of the trial court's ruling on defendant's hearsay objection.  The determination of the admissibility of evidence rests in the sound discretion of the trial court, and that determination will not be reversed on appeal absent an abuse of discretion.  
Leonardi v. Loyola University of Chicago
, 168 Ill. 2d 83, 92, 658 N.E.2d 450, 454-55 (1995).  Unless it falls within a recognized exception to the rule, hearsay, defined as an out-of-court statement offered to prove the truth of the matter asserted, is not admissible.  
Pavlik v. Wal-Mart Stores, Inc.
, 323 Ill. App. 3d 1060, 1064, 753 N.E.2d 1007, 1011 (2001).

In this case, plaintiff argued in the trial court, as he does in this court, that the statement of Wienhoff to defendant was not offered to prove the matter asserted by Wienhoff, but to establish that defendant had notice from DCFS of the no-contact requirement.  Plaintiff cites no legal authority to support his contention.  See Official Reports Advance Sheet No. 21 (October 17, 2001), Rs. 341(e)(7), (f), eff. October 1, 2001.

By definition, an out-of-court statement offered for a purpose other than for the truth of the matter asserted is not hearsay.  
People v. Reed
, 108 Ill. App. 3d 984, 989, 439 N.E.2d 1277, 1280 (1982).  See 
Halleck v. Coastal Building Maintenance Co.
, 269 Ill. App. 3d 887, 891, 647 N.E.2d 618, 623 (1995).  An out-of-court statement may be offered to show personal knowledge otherwise established.  See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §801.5, at 519 (4th ed. 1984).  

Here, the questioning of defendant had already established that her husband had been accused of a sexual offense against his daughter and that defendant had been contacted by DCFS caseworker Wienhoff.  The evidence was offered for the purpose of showing defendant's knowledge of the no-contact directive, and the trial court made its ruling in light of that limitation.  We find no abuse of discretion.  In addition, defendant later testified that Russell's bond required that he have no contact with his daughter and Jessica.  On appeal, defendant raises no issue concerning the admissibility of this evidence.  Any error that may have occurred in admitting the out-of-court statement of Wienhoff through defendant's testimony was harmless.  

The testimony of plaintiff concerning Wienhoff directing him to seek an order of protection was admissible as information acted upon by the witness and was not used to establish the truth of the information provided to plaintiff by Wienhoff.  See 
Tomaszewski v. Godbole
, 174 Ill. App. 3d 629, 636, 529 N.E.2d 260, 265 (1988).

Defendant later testified on her own behalf that she lived with her parents and grandparents.  She also testified that she had previously sought and was granted an order of protection against her parents.

Defendant was asked on cross-examination concerning certain testimony in the related Adams County proceeding.  Plaintiff and his wife, Robin, also testified as to defendant's testimony in that case.  Defendant argues the trial court erred in allowing plaintiff and his wife, Robin, to testify concerning defendant's testimony in the related paternity case, Adams County case No. 97-F-45.  Attached to defendant's motion to reconsider was a transcript of her testimony at an April 25, 2000, hearing in Adams County case No. 97-F-45.  In the April 25, 2000, hearing in Adams County, defendant testified that she had been molested by an uncle when she was 12 years old.  She also testified that she still occasionally saw that uncle at such events as Christmas.  Plaintiff and his wife testified, incorrectly, that defendant had testified in the Adams County proceeding that she (defendant) had been molested by her brother and uncle.  Although the transcript indicates that defendant did not testify to being molested by her brother, we find no significance to this distinction where the uncle would or could have access to Jessica.  In any event, the testimony of defendant in another case, made in the presence of plaintiff and Robin Mowen, was an admission about which plaintiff and Robin Mowen could testify.  See 
Pavlik
, 323 Ill. App. 3d at 1064, 753 N.E.2d at 1011.

The trial court's entry of an order of protection will not be overturned absent a clear abuse of discretion.  
Lutz v. Lutz
, 313 Ill. App. 3d 286, 289, 728 N.E.2d 1234, 1237 (2000).  Among the purposes of the Act are the avoidance of further abuse by enforcing court orders prohibiting abuse, reducing the abuser's access to the victim, and addressing related issues of child custody.  750 ILCS 60/102(4) (West 2000).  The definition of "abuse" includes "physical abuse" (750 ILCS 60/103(1) (West 2000)), which in turn is defined to include sexual abuse (750 ILCS 60/103(14) (West 2000)).  As pertinent to the facts of this case, "family or household member" includes spouses, parents, children, and stepchildren.  750 ILCS 60/103(6) (West 2000).  Persons protected by the Act include any person abused by a family or household member and any minor in the care of such person.  750 ILCS 60/201(a)(i), (a)(iii) (West 2000).  The Act recognizes that domestic violence creates an emotional atmosphere that is not conducive to healthy childhood development.  750 ILCS 60/102(1) (West 2000).   A petition for an order of protection may be filed by any person on behalf of a minor child who has been abused by a family or household member.  750 ILCS 60/201(b)(i) (West 2000).  To obtain a plenary order of protection under section 219 of the Act (750 ILCS 60/219 (West 2000)), the requirements of section 214 of the Act (750 ILCS 60/214 (West 2000)) must be satisfied.  750 ILCS 60/219(2) (West 2000).  In a proceeding to obtain an order of protection under the Act, the petitioning party has the burden of proving entitlement to the order by a preponderance of the evidence.  750 ILCS 60/205(a) (West 2000); 
In re Marriage of Gordon
, 233 Ill. App. 3d 617, 650, 599 N.E.2d 1151, 1173 (1992).  If the trial court finds that the person on whose behalf the petition was filed has been abused by a family or household member, the trial court shall issue an order of protection.  750 ILCS 60/214(a) (West 2000).  If the trial court finds that a defendant has abused a minor, a rebuttable presumption arises that awarding custody to that defendant would not be in the minor's best interests.  750 ILCS 60/214(b)(5) (West 2000).  To protect a minor from abuse or neglect or to protect the well-being of the minor, the trial court may award the party filing the petition the physical care and "possession" of the minor.  750 ILCS 60/214(b)(5) (West 2000).

Under the Act, "neglect" is defined as "the failure to exercise that degree of care toward a high-risk adult with disabilities which a reasonable person would exercise under the circumstances."  750 ILCS 60/103(11)(A) (West 2000).  In the Act, neglect is not defined in terms of the care of a minor.  We construe section 214(b)(5) of the Act 
in
 
pari
 
materia
 with the definition of neglect of a minor in section 2-3(1) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1) (West 2000)).  When a statute is unclear, a court may look to similar statutes as an aid to construction.  
In re A.G.
, 325 Ill. App. 3d 429, 433-34, 757 N.E.2d 524, 528 (2001).  It is presumed that statutes relating to the same subject are governed by one spirit and a single policy, and the statutes are read 
in
 
pari
 
materia
, giving effect to both provisions.  
Dundee Township v. Department of Revenue
, 325 Ill. App. 3d 218, 223, 757 N.E.2d 982, 985-86 (2001).

Under the Juvenile Court Act, a minor is deemed neglected if her environment is injurious to her welfare.  705 ILCS 405/2-3(1)(b) (West 2000).  When one child in a household has been abused, a presumption arises that the environment in the household is injurious to the other minors therein.  See 
In re B.J.
, 316 Ill. App. 3d 193, 199-200, 735 N.E.2d 1058, 1064-65 (2000).  Generally, neglect is the failure to exercise the care justly demanded by the circumstances, and it encompasses both wilful and unintentional disregard of parental duty.  
In re M.Z.
, 294 Ill. App. 3d 581, 593, 691 N.E.2d 35, 43 (1998).  

The purpose of the Act is to protect children from exposure to domestic violence in the household.  The abuse of one child in the household endangers the healthy childhood development of the other children in the household, and the trial court may consider that fact in determining whether to issue an order of protection even though the child for whom the order was sought was not directly subjected to abuse.  In addition, the trial court may consider the ability of a parent to protect a child from abuse by another member of the household who abused another child in the same household.  

For the purpose of issuing an order of protection, the evidence in this case was sufficient to establish that Russell abused his daughter, the stepsister of Jessica, a minor residing in the same household.  The evidence as to the charges of sexual assault against Russell, his being in jail, and his bond conditions was before the court.  There was also the testimony concerning other abuse in the family environment.  In addition, defendant was evasive when questioned about an order of protection she had obtained against her parents in Pike County before Thanksgiving the previous year.  She sought the order for the protection of the entire family.  Robin Mowen testified that defendant sought the order of protection after Jessica returned crying from defendant's parents' home and said that her grandmother had threatened to stab defendant and Russell and take Jessica away.  Later, defendant told Robin Mowen that Jessica made up the whole story and she did not pursue the order of protection further because she missed her parents. 

The trial court expressly resolved issues of credibility against defendant.  The trial court's issuance of the order of protection is supported by the evidence.

The final issue raised by defendant involves the sufficiency of the trial court's findings.  Section 214(c)(3) of the Act requires that, subject to the exception in section 214(c)(4) dealing with 
ex
 
parte
 emergency orders (750 ILCS 60/214(c)(4) (West 2000)), the trial court "shall" make findings in the official record or in writing and at a minimum set forth (1) that the court considered the factors in sections 214(c)(1) and (c)(2) (750 ILCS 60/214(c)(1), (c)(2) (West 2000)), (2) whether the  respondent's conduct or actions will likely cause irreparable harm or continued abuse if not prohibited, and (3) whether it is necessary to grant the requested relief to protect the petitioner or other alleged abused person.  750 ILCS 60/214 (c)(3)(i) through (c)(3)(iii) (West 2000).  

The written order entered on March 8, 2002, continues in effect the emergency order entered February 22, 2002.  The emergency order specifically found that the requirements of section 214 were satisfied and the court had considered the relevant factors set forth in section 214(c).  As for a plenary order, a prerequisite for the issuance of an emergency order is that the requirements of section 214 are satisfied.  750 ILCS 60/217(a)(2) (West 2000).  When the trial court issued its "Order Following Issuance of Emergency Order of Protection" continuing the emergency order in full force and effect as a plenary order of protection, the relevant findings of the emergency order were effectively incorporated by reference into the plenary order.  Further, the "official record" includes the trial court's comments in the report of proceedings, and additional evidence in the record shows that the trial court satisfied the findings requirements of the Act.

Section 214(c)(2) deals with comparing the relative hardships resulting to the parties from loss of possession of the family home (750 ILCS 60/214(c)(2) (West 2000)), an issue not involved in this case.  The written order of the trial court clearly establishes that the court considered the effect of its order on the relationship of the defendant and the minor child to family and school.  The trial court provided for visitation, not only for defendant but also for the grandparents and great-grandparents, and authorized plaintiff to temporarily place Jessica in another school.  

Section 214(c)(1)(ii) requires the trial court to consider the danger that the minor will be improperly removed from the jurisdiction, concealed, or separated from the primary caretaker.  750 ILCS 60/214(c)(1)(ii) (West 2000).  Concealment and removal of the minor from the jurisdiction were expressly prohibited in the written order.  

Section 214(c)(1)(i) directs the trial court to consider the nature, frequency, severity, pattern, and consequences of the past abuse or neglect and the likelihood of danger of future abuse or neglect.  750 ILCS 60/214(c)(1)(i) (West 2000).  Section 214(c)(1)(ii) also requires consideration of whether a minor will be abused or neglected.  750 ILCS 60/214(c)(1)(ii) (West 2000).  It is evident from the trial court's comments following the hearing that these factors were precisely the reason for the trial court's ruling.  The trial court observed that "every child is entitled to a safe and secure and nurturing and loving environment, and it is the duty of both parents to provide the same for the child."  The trial court noted that this case came down to the choices made by the custodial parent and found the credibility issues resolved against defendant.  The trial court was clearly concerned about the potential for future sexual abuse of Jessica, stating that it must extend the protection of the court system to Jessica in the form of a plenary order of protection until "there is some illumination on the shadows that swirl around the Holland household" as a result of further litigation that had already been started in the paternity action.  The trial court's express findings meet the statutory requirements.

The judgment of the circuit court is affirmed.

Affirmed.

MYERSCOUGH, P.J., and KNECHT, J., concur.