*In re* MARRIAGE OF MICHAEL HOLTORF, Petitioner-Appellee, and AMY HOLTORF, Respondent-Appellant.

Second District   No. 2—09—0872

Opinion filed January 19, 2010.—Rehearing denied February 25, 2010.

Michael T. Navigato and Theodore L. Kuzniar, both of Bochte & Kuzniar, P.C., of St. Charles, for appellant.

Erika J. Rahden, of Shaw, Jacobs & Associates, P.C., of St. Charles, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Respondent, Amy Holtorf, appeals from the orders of the trial court granting emergency and plenary orders of protection to her husband, petitioner Michael Holtorf, and their two children, K.H. and J.H., and denying her motion to vacate those orders of protection. We affirm.

On June 24, 2009, Michael filed a verified petition for an emergency order of protection, alleging that Amy had a history of committing retail theft, having been arrested on that charge twice in the past. On the second such occasion, Amy left the children unattended in the car while she went into the store. On June 23, 2009, Amy was arrested again for retail theft, while she had the children with her.

The trial court granted the emergency order of protection, finding that it had jurisdiction pursuant to the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2008)). The court utilized a preprinted form entitled "FINDINGS FOR ORDER OF PROTECTION." On line "B" a space for a name or names was followed by the statement "has/have been abused by Respondent, a family or household member as defined in the [Act]." The court placed an "X" in the box for line B and placed the names of K.H. and J.H. in the blank. Line "C" provided descriptions of eight types of abuse, with a box next to each description. The only box marked with an "X" was labeled "Neglect." Amy was ordered to stay away from Michael, K.H., and J.H. Michael was granted physical care and possession of the children and possession of the residence.

On July 2, 2009, Michael filed a petition for dissolution of marriage. Michael then filed an amended petition for an order of protection and a motion to consolidate the initial order of protection case with the dissolution case. Michael also attached to the amended petition an exhibit of additional allegations. He alleged that Amy had "an addiction and compulsion to shoplift, even when the minor children are in her care." She had been convicted of felony retail theft on two occasions and of misdemeanor retail theft "on many prior occasions." Amy "routinely" shoplifted while the children were with her, and she also left the children alone in the running car while she went into the store. On at least three occasions, including the June 23 arrest, at least one child was with Amy when she was arrested for retail theft. Amy had been indicated for abuse and neglect by the Department of Children and Family Services (DCFS) and had been "arrested for child endangerment." The trial court consolidated the cases and extended the emergency order of protection.

After several continuances and extensions, during which the court held a hearing on the order of protection (neither a transcript of the hearing nor a bystander's report was included in the record), the court entered a plenary order of protection on August 6, 2009. In its findings, the majority of which were, again, noted by marking boxes on a preprinted form, the trial court indicated that it had jurisdiction in the matter pursuant to both the Act and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (750 ILCS 36/101 *et seq.* (West 2008)). The court filled in the names of K.H. and J.H. in the blank provided for the name or names of persons that the court had found "has/have been abused by Respondent, a family or household member as defined in the [Act]." However, on this form, the word "abused" was scratched out and the word "neglect" was handwritten above it. The next line, which was marked with an "X," read "Said

abuse consists of:" and provided eight possibilities. The only box that was marked was labeled "Neglect."

On August 14, Amy filed a motion to vacate the plenary order of protection. After hearing argument, the trial court denied Amy's motion. This interlocutory appeal followed.

The Act is to be construed liberally to promote its purposes, which include supporting the victims of domestic violence to avoid further abuse and "reduce the abuser's access to the victim *** so that victims are not trapped in abusive situations" (750 ILCS 60/102(4) (West 2008)) and to expand the victim's civil and criminal remedies to effect physical separation from the abuser (750 ILCS 60/102(6) (West 2008)).

■ Section 214(a) of the Act provides that an order of protection may be issued "[i]f the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act." 750 ILCS 60/214(a) (West 2008). Abuse is defined as "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation." 750 ILCS 60/103(1) (West 2008). "Physical abuse" includes "knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(14)(iii) (West 2008).

The central inquiry in any proceeding to obtain an order of protection is whether the petitioner has been abused. *Best v. Best*, 223 Ill. 2d 342, 348 (2006). Proceedings to obtain an order of protection are civil in nature and governed by a preponderance of the evidence standard. *Best*, 223 Ill. 2d at 348; see 750 ILCS 60/205(a) (West 2008). A reviewing court will reverse a finding of abuse only if it is against the manifest weight of the evidence. *Best*, 223 Ill. 2d at 348-49.

Amy now contends that, as a matter of law, the trial court erred in entering both the emergency and the plenary orders of protection. According to Amy, the trial court exceeded its authority under the Act by entering the orders of protection solely on the basis of findings of neglect.

Amy has framed the issue as a question of law. The findings for the plenary order of protection reflect that the minors were neglected, rather than abused, by Amy, as the word "abused" was crossed out and the word "neglect" was handwritten on the order. The order also reflected that the type of "abuse" was neglect. According to Amy, since the trial court could issue an order of protection upon a finding of neglect only if the petitioner were a high-risk adult (see 750 ILCS 60/214(a) (West 2008)), the trial court erred as a matter of law in issuing the order of protection upon its finding of neglect.

While we were not supplied with either a transcript or a bystander's report of the hearing on the petition for the plenary order of protection and the trial court's ruling thereon, Amy did include in the record a transcript of the trial court's ruling on her motion to vacate the plenary order of protection. In that ruling, the trial court stated:

> "In the analysis of neglect, I did indicate and did consider the Illinois Domestic Violence Act and its purposes. In the Illinois Domestic Violence Act, neglect was defined as a failure to exercise the degree of care toward a high-risk adult with disabilities which a reasonable person would exercise under the circumstances, and that was cited in 750 ILCS 60/103 (11)(A).
>
> It goes on to say when you look at the Illinois domestic act [*sic*] neglect is not defined in terms of the care of the minor. However, I respectfully disagree with you when you indicate that I cannot consider or that Mowen[ ] versus Holland [336 Ill. App. 3d 368 (2003)] is not appropriate to consider. I do find that in the case of Mowen[ ] versus Holland, *** the court looked to the juvenile court act to define neglect for the purposes of defining neglect for the Illinois Domestic Violence Act.

>                        \* \* \*

> I do believe that the Court has not gone above and beyond its legal rights, that neglect is defined properly when looking at Mowen[ ] versus Holland as something that the Court can consider and is a basis for issuing the plenary order of protection ***."

We conclude that the trial court erred in ruling that neglect was a proper basis for the issuance of the plenary order of protection. A fundamental rule of statutory construction requires that, when an act defines its own terms, those terms must be construed according to the act's definitions. *Beecher Medical Center, Inc. v. Turnock*, 207 Ill. App. 3d 751, 754 (1990). The Act clearly defines "neglect" as "the failure to exercise that degree of care toward a high-risk adult with disabilities which a reasonable person would exercise under the circumstances." 750 ILCS 60/103(11)(A) (West 2008). In section 201 of the Act, which defines the "[p]ersons protected by the Act," the only mention of neglect is in the context of high-risk adults with disabilities. See 750 ILCS 60/201(a)(ii), (b)(ii) (West 2008). Further, section 214(a) of the Act provides that an order of protection may be issued "[i]f the court finds that petitioner has been abused by a family or household member or that petitioner is a high-risk adult who has been abused, neglected, or exploited, as defined in this Act." 750 ILCS 60/214(a) (West 2008). There is no reason to look beyond the Act for a definition of neglect or for an aid in determining who the Act protects from alleged neglect, and to the extent that *Mowen* holds otherwise, we repudiate it. As a

basis for an order of protection under the Act, neglect applies specifically to high-risk adults with disabilities. See *Frank v. Hawkins*, 383 Ill. App. 3d 799, 817 (2008).

Our conclusion is further bolstered by a review of the history of this statutory provision. The original Illinois Domestic Violence Act, effective March 1, 1982, was enacted as "An Act concerning abuse between family or household members." Ill. Rev. Stat. 1981, ch. 40, par. 2301—1 *et seq.* The original act made no reference to neglect; the court had the power to issue an order of protection "[u]pon a finding of abuse." Ill. Rev. Stat. 1981, ch. 40, par. 2302—8(a). In 1986, the legislature passed the Act, concerning "domestic violence" and amending and repealing certain other acts. Ill. Rev. Stat. 1987, ch. 40, par. 2311—1 *et seq.* This new act made no allowance for neglect as a basis for the issuance of an order of protection. Section 201 provided protection for:

"(i) any person abused by a family or household member;

(ii) any minor child or dependent adult in the care of such person; and

(iii) any person residing or employed at a private home or public shelter which is housing an abused family or household member.

A petition for an order of protection may be filed only by a person who has been abused by a family or household member or by any person on behalf of a minor child or adult with disabilities abused by a family or household member." Ill. Rev. Stat. 1987, ch. 40, par. 2312—1.

An order of protection was to issue "[i]f the court finds that petitioner has been abused by a family or household member, as defined in this Act." Ill. Rev. Stat. 1987, ch. 40, par. 2312—14(a).

Public Act 86—542, effective January 1, 1990, amended section 201 to include protection for "any high risk adult with disabilities who is abused, neglected, or exploited by a family or household member." Ill. Rev. Stat. 1989, ch. 40, par. 2312—1(ii). Section 214 was similarly amended to include issuance of an order of protection if the court found that the "petitioner is a high-risk adult who has been abused, neglected or exploited." Ill. Rev. Stat. 1989, ch. 40, par. 2312—14.

The legislature has never included neglect of anyone other than high-risk adults with disabilities as a basis for the issuance of an order of protection. Under the principle of *inclusio unius est exclusio alterius* (the inclusion of one thing in a statute is construed as the exclusion of all others), neglect of a child has never been, and is not now, a basis for the issuance of an order of protection under the Act. Other avenues, such as section 2—25 of the Juvenile Court Act of 1987 (705 ILCS 405/2—25 (West 2008)), authorize the issuance of

protective orders based on the health, safety, and best interests of neglected minors; such children have not been left unprotected. However, we must conclude that the trial court's issuance of the plenary order of protection under the Act, based on a finding of neglect, was improper.

■ However, in affirming a trial court's judgment, we are not limited either by the trial court's rationale or by the parties' arguments. *Greeling v. Abendroth*, 351 Ill. App. 3d 658, 665 (2004). This court may affirm the trial court on any basis supported by the record. *Northern Moraine Wastewater Reclamation District v. Illinois Commerce Comm'n*, 392 Ill. App. 3d 542, 563 (2009). Here, Amy has failed to provide a transcript or a bystander's report of the hearing held on the plenary order of protection. In order to determine whether a claimed error occurred, a court of review must have before it a record of the proceedings below. *In re M.R.*, 393 Ill. App. 3d 609, 618 (2009). The appellant bears the burden of presenting a sufficiently complete record of the proceedings in the trial court, and this court will resolve against the appellant any doubts that arise from an incomplete record. *M.R.*, 393 Ill. App. 3d at 618. In the absence of a transcript or a bystander's report, we must assume that the trial court heard sufficient evidence to support its decision, unless the record indicates otherwise. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 333 (2008).

The amended petition for an order of protection included an exhibit of 13 allegations against Amy, including, among other things, 3 allegations of incidents when Amy was arrested for retail theft while one or both of the children were with her, a general allegation that she "routinely" shoplifted while the children were with her, and allegations that she left the children alone in the car while it was running. The exhibit specifically alleged, "That on June 23, 2009, Respondent was arrested for Felony retail theft while the minor children were with Respondent." These are the same allegations made in Michael's petition for an emergency order of protection. The June 23, 2009, arrest with the children present was specifically alleged in both petitions. These allegations, if proved, certainly rise to the level of physical abuse, defined in section 103(14)(iii) of the Act as "knowing or reckless conduct which creates an immediate risk of physical harm." 750 ILCS 60/103(14)(iii) (West 2008). The potential for immediate physical harm, in either bringing the children into the store or leaving them in a running car while committing a theft, is manifest.

In its findings for the emergency order of protection, the trial court found these allegations proved by a preponderance of the evidence. The court specifically found that the children, K.H. and J.H.,

"have been abused by Respondent, a family or household member as defined in the [Act]." In the absence of a sufficient record of the hearing on the plenary order of protection, we assume that the trial court heard the same evidence regarding the same allegations that it heard before granting the emergency order of protection. Because that evidence was sufficient for a finding of abuse at the first hearing, it would also be sufficient for such a finding at the second hearing. Thus, while the trial court erred in issuing the plenary order of protection based on its finding that K.H. and J.H. were neglected, rather than abused, we presume that the evidence supporting the allegations made in both petitions was sufficient for a finding of physical abuse pursuant to section 103(14)(iii) of the Act (750 ILCS 60/103(14)(iii) (West 2008)). Therefore, although the basis of the plenary order of protection was not correctly noted, the trial court did not commit reversible error in issuing the plenary order of protection.

■ In the interest of judicial economy we must also address the trial court's use of the preprinted form entitled "FINDINGS FOR ORDER OF PROTECTION." While certain aspects of a trial court's order may be amenable to the simple act of checking a box to show that a particular section applies or has been considered, not all aspects are so easily addressed. Most glaringly missing from the form here are the trial court's factual findings. The form provides a box to check to show that a person or persons "has/have been abused by Respondent, a family or household member as defined in the [Act]." That a person has been abused is a conclusion; the findings of fact upon which this conclusion is based are not addressed on the form. Such an absence can lead to an ambiguous outcome, as in this case, where "abused" was simply crossed out and "neglect" was written in with no explanation.

Had we been provided a transcript or a bystander's report of the hearing on the petition for an order of protection, we may have been better informed of the court's findings of fact or lack thereof. However, it is the responsibility of the appellant, not the trial court, to provide a sufficient record for review. Findings of fact contained in a written order would benefit not only this court on appeal; they would also benefit the trial court in any future proceedings before it. The court system and the litigants would be well served by an amendment of this preprinted form.

For these reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

HUTCHINSON and JORGENSEN, JJ., concur.